**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUAN ROMAN, individually and on behalf of all others similarly situated, | Case No.:  1:23-cv-6520 |
| Plaintiffs, | **CLASS AND COLLECTIVE ACTION COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF** |
| vs. | |
| METROSPEEDY OPERATIONS, LLC | **JURY TRIAL DEMAND** |
| Defendant. | |

Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, The Law Office of Christopher Q. Davis, PLLC, alleges, upon personal knowledge and upon information and belief as to other matters, as follows:

## NATURE OF ACTION

1.      This is a collective and class action brought by Individual and Representative Plaintiff Juan Roman ("Roman" or "Plaintiff") and all putative plaintiffs (collectively "Plaintiffs"), on behalf of themselves and on behalf of the proposed Collective and Classes identified below. Plaintiff and the members of the proposed Collective and Classes were or are employed by Defendant MetroSpeedy Operations LLC ("MetroSpeedy" or "Defendant") in the United States (collective claims) and New York (class claims) during the relevant Class and Collective Periods as "Delivery Drivers."

2.      Plaintiffs and the putative Collective and Classes were affected by one or more of the Defendant's unlawful policies and practices, including misclassifying Delivery Drivers as "independent contractors" and failing to pay the putative Collective and Classes overtime premiums for all hours worked over 40 in a workweek, unlawfully deducting business expenses,

unlawfully withholding gratuities, and engaging in various other recordkeeping practices and notice failures that violated both federal and state laws.

3.     Plaintiffs are all similarly situated under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and the Federal Rule of Civil Procedure 23 and have suffered the same violations due to Defendant's common policies and practices.

4.     The Collective is made up of all persons who are or have been employed by Defendants as Delivery Drivers anywhere in the United States within the period of the past three years from this action's filing date through the date of the final disposition of this action (the "Collective Period") and who were subject to Defendant's unlawful policies and practices of: (i) misclassifying Delivery Drivers as independent contractors, rather than employees; (ii) failing to pay Delivery Drivers overtime premiums for all hours worked in a workweek over forty during the Collective Period; (iv) failing to record or compensate Delivery Drivers' for off-the-clock hours worked; and (v) failing to maintain proper recordkeeping practices, all in violation of the FLSA.

5.     The Class(es) are made up of all persons who are or have been employed by Defendant as Delivery Drivers in New York State within the period of six years prior to the filing date (the "Class Period") and who were subject to Defendant's aforementioned unlawful policies and practices resulting in the following violations of the New York Labor Law ("NYLL"): (i) failure to pay overtime premiums for all hours worked in excess of forty hours within a workweek, (ii) unlawful deductions from wages for business expenses, whether directly or indirectly, (iii) unlawful withholding of gratuities; (iv) failure to provide wage notices at the time of hiring; (v) the failure to provide accurate wage statements on each payday that includes the information required by the NYLL, including the actual number of hours worked during the pay period; and

(vi) failing to maintain proper recordkeeping practices, all in violation of the NYLL.

6.      Plaintiffs seek relief for the Collective under the FLSA 29 U.S.C. §§ 201 *et seq.* and for the Classes pursuant to the applicable provisions of the NYLL, §§ 190 *et seq.*, to remedy the Defendant's failure to pay all wages due and for recordkeeping failures, in addition to injunctive relief.

## PARTIES

7.      Individual and Representative Plaintiff Juan Roman was a Delivery Driver with MetroSpeedy from around October 2021 until around October 2022. He presently, and at all relevant times, resides in Brooklyn, New York. At all relevant times he was an "employee" within the meaning of all applicable statutes.

8.      Defendant MetroSpeedy is a domestic limited liability company registered to do business in the State of New York. MetroSpeedy maintains its principal place of business at 230 West 39th Street, New York, NY.

9.      Upon information and belief, MetroSpeedy has an annual gross volume of sales in excess of $500,000.

## JURISDICTION & VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

11.     Specifically, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 207, *et seq*.

12.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

13.     Venue is proper in the United States District Court, Southern District of New York

pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the action that is the subject of this action occurred in this District.

14.     This Court has personal jurisdiction over Defendant MetroSpeedy, because it is a domestic corporation with headquarters in New York, has substantial business operations in New York, and routinely transacts business in New York.

## STATEMENT OF FACTS

15.     Plaintiff Roman and the members of the putative Collective and putative Classes are presently, or were formerly, employed by the Defendant as Delivery Drivers.

16.     MetroSpeedy is a technology-based delivery company that provides on-demand, same day, or scheduled delivery services of small to medium-sized packages for businesses. MetroSpeedy operates across all areas of Manhattan, Brooklyn, the Bronx, Queens, Staten Island, Westchester County, and parts of Long Island, New Jersey, and Connecticut.

17.     Plaintiff Roman interviewed with MetroSpeedy after responding to an advertisement on Indeed for a delivery driver position to be paid $35.00 per hour plus gratuities for the size of vehicle that Plaintiff Roman had.

18.     In or around October 2021, MetroSpeedy hired Plaintiff Roman as a Delivery Driver.

19.     MetroSpeedy instructed Plaintiff Roman to take an assistant with him in the vehicle during working hours so MetroSpeedy would not incur any parking tickets during deliveries.

20.     MetroSpeedy paid Mr. Roman $20 to $30/hour.

21.     MetroSpeedy did not directly compensate assistants; instead, Delivery Drivers were expected to pay their assistants directly.

**Delivery Drivers Were Manual Workers**

22.     As a Delivery Driver for Defendants, Plaintiff Roman spent at least 25% of his time engaged in physical labor, which included but was not limited to, loading and unloading hundreds of pre-packaged meals in and out of a minivan or SUV and carrying such pre-packaged meals into homes, apartment buildings, or commercial buildings, many without elevator service.

23.     As such, Plaintiff Roman was a manual worker.

24.     Similar to Plaintiff Roman, all other Delivery Drivers employed by Defendant similarly spent more than 25% of their time engaged in physical labor that included, but was not limited to, loading and unloading pre-packaged meals in and out of vehicles.

25.     As such, Delivery Drivers are, similar to Plaintiff Roman, manual workers.

26.     During his entire employment with Defendants, Plaintiff Roman was paid on a weekly basis.

**Defendant's Relationship To Plaintiffs**

27.     Defendants misclassified Plaintiff Roman, and all other Delivery Drivers, as independent contractors.

28.     During the relevant Class and Collective Periods, Defendants required Delivery Drivers to have their own vehicles for deliveries and did not adequately compensate Delivery Drivers for gas and tolls.

29.     MetroSpeedy trained Plaintiffs as Delivery Drivers by directing Plaintiffs to accompany existing Delivery Drivers and learning from them what to do and not do.

30.     Plaintiffs would receive specific directives from MetroSpeedy while completing deliveries. For example, MetroSpeedy texted Delivery Drivers instructions to take "2-3 pictures of the pickup and 2-3 pictures for the drop-off task. All photos should be visible enough and contain the label, package, and the pickup and dropoff [sic] location."

31.     Delivery Drivers were further instructed by MetroSpeedy to "Let Dispatch know if orders are not ready or orders are not labeled" and to "Always update the status of the pickup and dropoff [sic]." Delivery Drivers were also instructed to "let Dispatch know" of any delays.

32.     MetroSpeedy determined the route Delivery Drivers were to drive to make deliveries.

33.     Delivery Drivers were instructed to call the MetroSpeedy base location if a customer was not available to receive the delivery, especially if the delivery was perishable. MetroSpeedy base would direct the Delivery Driver as to whether the "task" package could be left at the door or with a doorman or concierge, or if the "task" package needed to be returned to the MetroSpeedy base location.

34.     MetroSpeedy would occasionally call Delivery Drivers with additional instructions and requests such as picking up another employee's allocated "tasks" and delivering them (for example, if an employee making deliveries by mechanical bicycle experienced a battery issue and was unable to complete their "tasks" in the assigned timeframe).

35.     Upon information and belief, if a Delivery Driver did not want to deliver to an assigned location, MetroSpeedy would not facilitate such a request. Instead, it was incumbent upon the Delivery Driver to find another Delivery Driver who was amenable to switching assigned "tasks."

36.     Defendant misclassified Plaintiff Roman, and other similarly situated individuals in the role of "Delivery Drivers" as independent contractors, even though Defendant retained and exercised the absolute right to control and direct the work of all Delivery Drivers.

37.     The nature of the services Plaintiffs performed, and the manner in which they performed these services, created an employer-employee relationship, making them ___*at all times*___,

"employees" within the meaning of the FLSA and the NYLL.

**Wage Calculation and Deductions**

38.     During the relevant Class and Collective Periods, Defendant did not provide Delivery Drivers with means to report off-the-clock work, including but not limited to waiting for loading to start at the beginning of a shift and unloading trucks after a shift.

39.     Plaintiff Roman estimates he waited off-the-clock up to one hour, two to three times a week waiting for loading to start at the beginning of a shift. On one occasion, he waited several hours. These delays were often because trucks containing delivery packages were not there on time or MetroSpeedy employees who staffed and managed the MetroSpeedy base location were late in opening up the location so Delivery Drivers could enter and begin their work.

40.     Plaintiff Roman estimates he spent at least thirty minutes to an hour completing off-the-clock work four to five times a week during the relevant Class and Collective Periods.

41.     During the relevant Class and Collective Periods, Defendant required Delivery Drivers to have their own vehicles for deliveries and did not contribute towards the Delivery Driver's automobile insurance costs.

42.     During the relevant Class and Collective Periods, Defendant did not adequately compensate Delivery Drivers for gas, tolls, parking tickets, or car insurance. Defendant did not request Delivery Drivers provide logs of miles driven, gas expended, tolls incurred, or tickets incurred.

43.     For example, on Plaintiff Roman's paystub for the week of November 6, 2022 through November 12, 2022, Plaintiff Roman worked for thirty hours and forty-three minutes (this does not include off-the-clock work which the Defendant did not record). For this same time, Plaintiff Roman was given $30.00 for "Temporary Fuel Credit." No basis for this value is given

despite MetroSpeedy's access to estimate miles driven based on their determination of each Delivery Driver's driving route. The paystub does not report miles driven each day. Nor does it report whether Plaintiff Roman incurred any tolls or other business costs for which he was not compensated.

44.    Upon information and belief, MetroSpeedy refused to compensate Delivery Drivers for parking tickets incurred while working.

45.    For example, Plaintiff Roman incurred one parking ticket while working for MetroSpeedy. Instead, Plaintiff Roman paid an attorney $150 out of pocket to refute the parking ticket in court.

**Misappropriation of Gratuities**

46.    During the relevant Class and Collective Periods, Defendant often withheld all or part of Plaintiffs' gratuities.

47.    Defendant explained to Plaintiff Roman via text messages that the customer and software system "[were] experiencing issues remitting tips to [Defendant MetroSpeedy]" and proceeded to "assure [Plaintiff Roman] that any tips [he was] owed [would] be paid" once the issue was resolved. Defendant has not done so.

48.    Defendant therefore misappropriated Plaintiff's gratuities in violation of NYLL § 196-d.

## COLLECTIVE ACTION ALLEGATIONS

49.    Mr. Roman brings FLSA claims on behalf of himself, and other individuals similarly situated, as authorized under 29 U.S.C. § 216(b).  The individuals similarly situated in the Collective are:

> **Proposed Collective:** All person who are, or have been, employed (whether classified as independent contractors or employees) by

Defendant as Delivery Drivers in the United States within the period of the past three years prior to this action's filing date through the date of the final disposition of this action who worked over 40 hours in at least one workweek during the Collective Period and were not paid overtime premiums.

50.    Defendant hired Mr. Roman and the Collective during the Collective Period.

51.    Mr. Roman began working for Defendants in or around October 2021 as a "Delivery Driver."

52.    All Delivery Drivers had common job descriptions and performed the same duties, namely reporting the warehouse to load deliveries and accepting and completing "tasks" delivering packages throughout MetroSpeedy service areas.

53.    Delivery Drivers used their own vehicles to complete deliveries.

54.    Upon information and belief, MetroSpeedy did not adequately reimburse Delivery Drivers for gas or mileage.

55.    Upon information and belief, MetroSpeedy did not reimburse Delivery Drivers for tolls incurred during the course of employment.

56.    Upon information and belief, MetroSpeedy did not reimburse Delivery Drivers for tickets incurred during the course of employment.

57.    Upon information and belief, MetroSpeedy did not reimburse Delivery Drivers for assistants that Delivery Drivers were expected to compensate directly.

58.    MetroSpeedy uses OnFleet software and app to track Delivery Driver's hours, status of their "tasks," and convey driving route directions.

59.    MetroSpeedy occasionally used Dash software and app for some "tasks" for which MetroSpeedy was a third-party service provider. Dash allowed Delivery Drivers to see what gratuity amounts customers had submitted.

**Defendants Timekeeping Policies**

60.     Irrespective of whether the Plaintiffs were classified as W2 employees or misclassified as independent contractors, the Defendant at all times failed to consistently record Plaintiffs' off-the-clock hours worked.

61.     Off-the-clock hours worked by Delivery Drivers include, but are not limited to, waiting for loading to start at the beginning of a shift and unloading trucks after a shift.

62.     Plaintiff Roman estimates he waited off-the-clock up to one hour, two to three times a week waiting for loading to start at the beginning of a shift. On one occasion, he waited several hours. These delays were often because trucks containing delivery packages were not there on time or MetroSpeedy employees who staffed and managed the MetroSpeedy base location were late in opening up the location so Delivery Drivers could enter and begin their work.

63.     Plaintiff Roman assisted with unloading trucks after his shifts four to five times a week. Each instance took between thirty minutes to one hour. This time was not recorded by Defendant as part of Plaintiff Roman's hours worked.

64.     Upon information and belief, other Delivery Drivers similarly worked off-the-clock hours for which they were not compensated by Defendant.

65.     Despite knowing that Plaintiffs worked such hours in addition to those reported in Plaintiffs' paystubs, Defendants nonetheless failed to provide compensation for all of these hours.

66.     Defendants did not provide Plaintiffs and others similarly situated with pay statements or other documentation that reflected the **_actual_** number of hours that Plaintiffs worked.

**Plaintiffs Worked Often Worked in Excess of 40 Hours in a Week**

67.     Plaintiff Roman's hours fluctuated on a week-to-week basis, depending on the number of "task" deliveries he was assigned on a given day and the distances required to travel to complete his assignments.

68.     Additionally, Plaintiff Roman's unreported hours included time waiting for packages for his first "task" to be ready to load into his vehicle and helping unload after his shift two to three days a week. This increased his hours worked by 30 minutes to one hour for the day several days per week.

69.     Plaintiff Roman sometimes worked in excess of forty hours per week, for which he was not paid overtime premiums.

70.     For example, during the workweek starting August 7, 2022, and ending August 13, 2022, Plaintiff Roman worked for 52 hours and 12 minutes.

71.     Plaintiffs sometimes worked in excess of forty hours per week, for which they were not paid overtime premiums.

**Defendants Compensation Policies**

72.     MetroSpeedy compensated Plaintiff Roman based on an hourly rate.

73.     Plaintiff Roman was hired as a Delivery Driver at a rate of $35.00 per hour plus gratuities for the size of vehicle that Plaintiff Roman had.

74.     Upon information and belief, Plaintiff Roman's hourly pay rate ranged from $20.00 to $30.00 per hour. Plaintiff Roman was paid $30.00 per hour if he brought his own assistant. Plaintiff Roman was paid $20.00 per hour if he was unable to provide his own assistant. In those instances, another MetroSpeedy employee would accompany him on his deliveries.

75.     Upon information and belief, Plaintiff Roman was not paid $35.00 which is the pay rate advertised when he was hired by MetroSpeedy.

76.     Upon information and belief, Delivery Drivers' hourly pay rate ranged from $20.00 to $35.00 per hour.

77.     MetroSpeedy paid Plaintiff Roman within seven days of every week worked.

78.     MetroSpeedy provided a breakdown of the compensation Plaintiff Roman received including the rate of pay and number of hours worked.

79.     However, MetroSpeedy did not provide Plaintiff Roman with an accounting of gas, tolls, or tickets. Instead, MetroSpeedy included a nominal amount for gas ranging from $0.00 to $72.00. MetroSpeedy did not provide Plaintiff Roman with any compensation for tolls or tickets incurred.

## RULE 23 CLASS ALLEGATIONS

80.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined class:

**Proposed Classes:**     **1. NYLL Overtime Class**: All persons who are or have been employed by Defendants as Delivery Drivers in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action who worked at least one workweek during the Class Period *and* who during at least one workweek were subject to Defendants' common policy and practice of failing to pay overtime premium for hours worked above 40 in a workweek in violation of the NYLL.

**2. NYLL Deduction Class**: All persons who are or have been employed by Defendants as Delivery Drivers in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action who worked at least one workweek during the Class Period *and* were subject to Defendants' common policy of deducting, either directly or by separate transaction, necessary work-related expenses in violation of the NYLL.

**3. NYLL Spread of Hours Class:** All persons who are or have been employed by Defendants as Delivery Drivers in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action who worked at least

one workweek during the Class Period *and* who during at least one workweek were subject to Defendants' common policy and practice of failing to pay spread of hours pay on days in which Delivery Drivers worked ten or more hours in one single day in violation of the NYLL.

**4. NYLL WTPA Class:** All persons who are or have been employed by Defendants as Delivery Drivers in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action who worked at least one workweek during the Class Period *and* were subject to Defendants common policy and practice of not providing lawful pay statements and/or wage notices in violation of the NYLL.

**5. NYLL Tip Misappropriation Class:** All persons who are or have been employed by Defendants as Delivery Drivers in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action who worked at least one workweek during the Class Period *and* were subject to Defendants common policy of unlawfully withholding gratuities.

81.     Plaintiffs incorporate by reference the facts alleged in the preceding paragraphs above.

82.     Numerosity: The Proposed Classes are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes, and on that basis, alleges, that during the relevant time period, Defendants employed *at least* forty (40) individuals who satisfy the definition of the Proposed Classes.

83.     Typicality: Plaintiff's claims are typical of the members of the Proposed Classes. Plaintiff is informed by other Delivery Drivers that the putative Class were subject to the same aforementioned unlawful policies during the Class Period. Plaintiff, and all other Delivery Drivers, was compensated in the same manner. All Plaintiffs were subject to Defendants' unlawful policies and practices alleged more fully above.

84.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

85.     Adequacy: Plaintiff will fairly and adequately protect the interests of the Proposed Classes and has retained counsel experienced in complex FLSA and NYLL class and collective action litigation.

86.     Commonality: Common questions of law and fact exist to all members of the Proposed Classes and predominate over any questions solely affecting individual members of the Proposed Classes, including but not limited to: Whether members of the Proposed Classes were required to work under Defendants' direction and control;

      a.     Whether Defendants improperly classified members of the Proposed Classes as "independent contractors" instead of "employees" within the meaning of NYLL;

      b.     Whether Defendants unlawfully failed to pay appropriate overtime compensation to members of the NYLL Overtime Class in violation of the NYLL;

      c.     Whether Defendants took deductions, directly or indirectly, for business-related expenses from the proposed NYLL Deduction Class members' pay in violation of the NYLL;

      d.     Whether Defendants unlawfully failed to pay spread of hours pay to members of the NYLL Spread of Hours Class in violation of the NYLL;

      e.     Whether Defendants unlawfully failed to pay members of the NYLL Frequency of Pay Class on a weekly basis in violation of the NYLL;

f.    Whether Defendants failed to provide proper WTPA notices and pay statements to the NYLL WTPA Class members in violation of the NYLL;

g.    Whether Defendants failed to pay members of the NYLL Tip Misappropriation Class all gratuities given by clients;

h.    Whether Defendants maintained lawful wage and hour records under the NYLL;

i.    Whether Defendants' actions were "willful" under the NYLL.

87.    This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

88.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the proposed Classes predominate over any questions affecting only individual members of the proposed Classes and because a class action is superior to other available methods for their fair and efficient adjudication of this litigation.

89.    Defendants' uniform policies and practices denied the proposed Classes the wages, including overtime pay and spread of hours pay, and gratuities they are entitled to. The damages suffered by the individual members of the proposed Classes are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior, because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

90.    Plaintiff Roman intends to send notice to all members of the proposed Classes to the extent required by Rule 23. The names and addresses of the members of the proposed Classes will be available from Defendants.

91.    Defendants did not reimburse, or otherwise made direct deductions, from Plaintiffs' compensation for business-related expenses that were for the benefit of their employer, such as the cost of gas, car insurance, tolls incurred while making deliveries, parking tickets received while making deliveries, and cell phone charges incurred in using the Company's routing software to fulfil catering orders, all resulting in unlawful deductions from Plaintiffs' wages.

92.    For example, on Plaintiff Roman's paystub for the week of November 6, 2022 through November 12, 2022, Plaintiff Roman worked for thirty hours and forty-three minutes (this does not include off-the-clock work which the Defendant did not record). For this same time, Plaintiff Roman was given $30.00 for "Temporary Fuel Credit." No basis for this value is given. The paystub does not report miles driven each day. Nor does it report whether Plaintiff Roman incurred any tolls or other business costs for which he was not compensated.

93.    Defendants also did not provide Plaintiffs with wage notices at the time of hire, nor did their wage statements contain employer's name including Doing Business As names, physical address, mailing address, or telephone number, as required by the WTPA.

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>
**(Fair Labor Standards Act: Unpaid Overtime Wages)**

94.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

95.    Mr. Roman consents in writing to be a part of this action, pursuant to 20 U.S.C. § 216(b). Mr. Roman's written consent form is filed contemporaneously on the Court's docket with

this Action. Mr. Roman anticipates that as this case proceeds, other individuals will sign consent forms and join as party plaintiffs under the FLSA.

96.     At all relevant times, the Defendant constitutes Plaintiffs' "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.

97.     At all relevant times herein, Plaintiff Roman and the members of the proposed Collective have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

98.     At all relevant times, upon information and belief, Defendant' gross revenue has exceeded $500,000.00.

99.     The FLSA requires each covered employer such as Defendant to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

100.     During their employment with Defendant, within the applicable statute of limitations, Plaintiff Roman and other members of the Collective sometimes worked in excess of forty hours per workweek without overtime compensation.

101.     Despite the hours worked by Plaintiff Roman and the Collective, Defendant willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay them overtime compensation.

102.     Based on the policies and practices articulated above, the Defendant uniformly denied Plaintiff Roman and the members of the Collective mandated overtime premiums.

103.     Also, by failing to accurately record, report, and/or preserve records of all hours worked by Plaintiff Roman and the Collective, Defendant has failed to make, keep, and preserve

records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA.

104.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. §§ 216(b) and 255(a).

105.    Because Defendant's violations of the FLSA are willful, a three-year statute of limitation applies. 29 U.S.C. § 255.

106.    Plaintiff Roman, on behalf of himself and the Collective seeks the recovery of attorneys' fees and costs to be paid by the Defendant provided by the FLSA, 29 U.S.C. § 216(b).

## AS AND FOR A SECOND CAUSE OF ACTION
### (New York Labor Law: Unpaid Overtime Wages)

107.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

108.    At all relevant times herein, Mr. Roman and the proposed NYLL Overtime Class Members have been entitled to the rights, protections, and benefits provided under the NYLL.

109.    At all relevant times herein, each of the Defendant has been an employer within the meaning of the NYLL.

110.    The overtime wage provisions of Article 19 of the NYLL, and its supporting regulations, applies to Defendant.

111.    Defendant has failed to pay Plaintiff Roman and the putative NYLL Overtime Class the overtime wages they are entitled to under the NYLL.

112.    By Defendant's failure to pay Plaintiff Roman and the putative NYLL Overtime Class premium overtime wages for hours worked in excess of 40 hours per week, Defendant has willfully, within the meaning of N.Y. Lab. Law §663, violated N.Y. Lab. Law Article 19, §§ 650

*et seq*., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

113.    Due to Defendant's violation of NYLL, Plaintiff Roman and the NYLL Overtime Class members are entitled to recover from Defendant their unpaid overtime wages, reasonable attorney's fees and costs of the action, and pre-judgment and post-judgment interest.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(New York Labor Law: Failure to Pay Spread of Hours)**

114.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

115.    At all relevant times herein, Plaintiff Roman and the members of the putative NYLL Spread of Hours Class have been entitled to the rights, protections, and benefits provided under the NYLL.

116.    At all relevant times herein, Plaintiff Roman and the members of the putative NYLL Spread of Hours Class have been entitled to the rights, protections, and benefits provided under the NYLL.

117.    Plaintiff Roman and the NYLL Spread of Hours Class members regularly had workdays that lasted more than ten (10) hours in a single day.

118.    For example, during the workweek starting on July 10, 2022, and ending on July 16, 2022, Plaintiff Roman worked in excess of ten (10) hours in a single day on July 11, 2022, July 12, 2022, and July 14, 2022. On those days, Plaintiff Roman worked 12 hours and 12 minutes, 10 hours and 39 minutes, and 10 hours and 44 minutes, respectively. Including off-the-clock hours worked by Plaintiff Roman increases each time by up to 2 hours.

119.    Defendants willfully and intentionally failed to compensate Plaintiff Roman and the NYLL Spread of Hours Class one hour pay at the New York minimum hourly wage rate when their workdays exceeded ten (10) hours, as required by New York law.

120.    As a result of Defendant's willful and unlawful conduct, Plaintiff Roman and members of the NYLL Spread of Hours Class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(New York Labor Law: Unlawful Wage Deductions)**

121.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

122.    At all relevant times herein, Plaintiff Roman and the members of the putative NYLL Deduction Class have been entitled to the rights, protections, and benefits provided under the NYLL.

123.    At all relevant times, Defendant has been an employer within the meaning of the NYLL.

124.    The provisions related to the failure to reimburse business-related expenses of Article 19 of the New York Labor Law and its supporting regulations apply to the Defendant.

125.    NYLL § 193 prohibits deductions from employees' wages unless the deductions are expressly authorized and for the benefit of the employee and limited to the enumerated categories of permissible deductions.

126.    Defendants also unlawfully required that Plaintiff and the NYLL Deduction Class bear the expenses of their employment, including but not limited to the cost of their gas, tolls, parking tickets, car insurance, car expenses, and cell phone charges, in violation of NYLL §§ 193

and 198(b).

127.    Defendants also required Delivery Drivers have assistants and unlawfully required that Plaintiff and the NYLL Deduction Class bear the expenses of paying their assistants directly, in violation of NYLL § 193.

128.    As a result of Defendant's unlawful conduct, Plaintiff Roman and the putative NYLL Deduction Class are entitled to an award of damages equal to all wages unlawfully deducted and all unlawful payments required by separate transaction, in an amount to be determined at trial, plus pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

### AS AND FOR A FIFTH CAUSE OF ACTION
**(New York Labor Law: Failure to Furnish Accurate Wage Statements)**

129.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

130.    At all relevant times, Plaintiff and the members of the putative NYLL WTPA Class have been entitled to the rights, protections, and benefits provided under the NYLL.

131.    At all relevant times, Defendant has been an employer within the meaning of the NYLL.

132.    The record-keeping provisions of Article 19 of the New York Labor Law and its supporting regulations applies to the Defendant.

133.    NYLL §195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria required under the NYLL.

134.    Defendant did not provide Plaintiff and the putative NYLL WTPA Class with a legally sufficient wage statement upon the payment of wages, as required by NYLL § 195(3).

135.    As a direct and proximate result of Defendant's unlawful conduct regarding insufficient wage statements as set forth herein, the Plaintiff and members of the putative NYLL

WTPA Class have sustained damages. Specifically, without the employer's phone number and mailing address, Plaintiff and members of the putative NYLL WTPA Class were not able to make direct complaints regarding compensation for off-the-clock hours, misappropriated gratuities, and overtime pay rate.

136.    As a result of Defendant's unlawful conduct, Plaintiff and the putative NYLL WTPA Class are entitled to an award of damages pursuant to NYLL § 198, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

### AS AND FOR A SIXTH CAUSE OF ACTION
**(New York Labor Law: Failure to Furnish Wage Notices)**

137.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

138.    At all relevant times, Plaintiff and the members of the putative NYLL WTPA Class have been entitled to the rights, protections, and benefits provided under the NYLL.

139.    At all relevant times, Defendant has been an employer within the meaning of the NYLL.

140.    The record-keeping provisions of Article 19 of the New York Labor Law and its supporting regulations applies to Defendant.

141.    NYLL §195 requires that employers furnish employees with wage notices containing accurate, specifically enumerated criteria required under the NYLL.

142.    Defendant did not provide Plaintiff and the NYLL WTPA Class with wage notices at the start of their employment, as required by NYLL § 195.

143.    As a direct and proximate result of Defendant's unlawful conduct regarding providing wage notices at the start of employment as set forth herein, the Plaintiff and members

of the putative NYLL WTPA Class have sustained damages. Specifically, without wage notices, Plaintiff and members of the putative NYLL WTPA Class were not given advance notice of their pay rates and could not compare their expected pay rate to subsequent wage statements to determine if they were accurate.

144.    As a result of Defendant's unlawful conduct, Plaintiff and the putative NYLL WTPA Class are entitled to an award of damages pursuant to NYLL § 198, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**(New York Labor Law: Unlawful Withholding of Gratuities Violation)**

145.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

146.    At all relevant times, Plaintiff and the members of the putative NYLL Tip Misappropriation Class have been entitled to the rights, protections, and benefits provided under the NYLL.

147.    At all relevant times, Defendants has been an employer within the meaning of the NYLL.

148.    The provisions of NYLL Articles 6 and 19, and the supporting New York State Department of Labor regulations, apply to Defendants and protect Plaintiffs and members of the putative class.

149.    Pursuant to NYLL §196-d, and the supporting New York State Department of Labor Regulations, "[n]o employer or her agent or an officer or agent of any corporation, or any other personal shall … retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

150.    Defendant unlawfully withheld and retained portions of gratuities provided to Delivery Drivers through the Defendant's app-based interface for customers.

151.    Defendant allowed its customers to believe that gratuities given through the Defendant's app-based interface for customers were given in-full to Delivery Drivers; however, upon information and belief, Defendant retained some or all gratuities for themselves.

152.    Defendant violated NYLL §196-d by (a) collecting gratuities from customers; (b) failing to distribute the gratuities to Delivery Drivers, and upon information and belief, retaining the gratuities for themselves; and (c) representing to customers or allowing them to believe that the gratuities were given to the Delivery Drivers.

153.    Upon information and belief, Defendant willfully disregarded and purposefully evaded recordkeeping requirements of applicable New York State law by failing to maintain proper and complete records of service charges in the nature of gratuities as required under 12 New York Codes, Rules and Regulations ("NYCRR") § 146-2.

154.    As a direct and proximate result of Defendant's unlawful conduct regarding gratuities as set forth herein, the Plaintiff and members of the putative NYLL Tip Misappropriation Class have sustained damages.

155.    Per the foregoing reasons, Defendant has violated NYLL Article 6 NYLL §196-d, triggering NYLL Article 6 NYLL §198, and is liable to Plaintiffs and putative class members in an amount to be determined at trial, plus interest, attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Roman, on behalf of himself and all members of the Proposed Collective and Classes, prays for relief as follows:

A.    That the Court determine that this action may proceed as a collective action pursuant to 29 U.S.C. § 216 and a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

B.    That the Court determine that Plaintiff's counsel and Plaintiff Juan Roman can adequately represent the interests of the class as class counsel and class representatives, respectively;

C.    That the Court declare that the Defendant has violated the Fair Labor Standards Act as to Plaintiff Roman and the putative Collective;

D.    That the Court declare that the Defendant has violated the provisions of the New York Labor Law as to Plaintiff Roman and putative Classes;

E.    That the Court declare that Defendant's violations as described above are found to be willful;

F.    That the Court award Plaintiff Roman and the putative Collective and Classes for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

G.    That the Court award reasonable attorney's fees and costs pursuant to the NYLL and 29 U.S.C. § 216(b) and/or other applicable law;

H.    That the Court enjoin Defendant to cease and desist from unlawful activities in violation of the FLSA and the NYLL; and

I.    For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff on behalf of

himself and all other similarly situated persons demand a trial by jury as to all issues so triable.

DATED:        July 27, 2023
              New York, New York

              Christopher Q. Davis, Esq.
              Rachel M. Haskell, Esq.
              The Law Office of Christopher Q. Davis
              80 Broad Street, Suite 703
              New York, New York 10004
              (646)-430-7930 (main)
              (646)-349-2504 (fax)

              *Counsel for Plaintiff and the Putative Collective
              and Class(es)*